James Belford Brown (SBN 83355)
Jennifer A. Scott (SBN 204234)
HERUM CRABTREE BROWN, a California Corporation
2291 West March Lane, Suite B100
Stockton, CA  95207
Telephone:  (209) 472-7700
Facsimile:  (209) 472-7986

Jonathan D. Selbin (SBN 170222)
Lisa J. Leebove (SBN 186705)
H. John Gutierrez (SBN 235406)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West, 275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1166

John W. Rasmussen
Dale W. Robinson
Jay M. Allen
JOHNSON, RASMUSSEN, ROBINSON &
ALLEN, P.L.C.
48 North MacDonald Street
Mesa, AZ  85201
Telephone:  (480) 964-1421
Facsimile:  (480) 433-7311

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BERTINO, ESAU GALINDO and DONALD W. HEMANS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MOTORS CORPORATION, a Delaware corporation,<br>Defendant. | Case No.  2:05-cv-889-GEB-PAN<br><br>**NOTICE OF MOTION AND MOTION FOR REMAND; MEMORANDUM IN SUPPORT THEREOF**<br><br>Date: August 1, 2005<br>Time: 9:00 A.M.<br>Courtroom: 10<br>Judge: Hon. Garland E. Burrell Jr. |

435060.2

NOTICE OF MOTION & MOTION FOR REMAND; MEMORANDUM IN SUPPORT THEREOF

1    **I.    NOTICE OF MOTION AND MOTION**

2           Please take notice that on August 1, 2005 at 10:00 a.m. in Courtroom 10 of the

3    Sacramento Division of the United States District Court for the Eastern District of California,

4    Plaintiffs Jason Bertino, Esau Galindo and Donald W. Hemans will, and hereby do, move the Court to

5    remand this action to the Superior Court of the State of California for the County of San Joaquin,

6    pursuant to 28 U.S.C. § 1447(c), on the grounds that the Class Action Fairness Act does not apply to

7    this matter; the amount in controversy requirement for diversity jurisdiction, 28 U.S.C. § 1332, is not

8    satisfied; and there is no basis for federal question jurisdiction.

9           This motion is based on the Notice of Motion and Motion, the Memorandum in

10   Support of the Motion, all pleadings, papers and records on file in this action, and any oral argument

11   before the Court.

12   **II.    STATEMENT OF RELIEF SOUGHT**

13          Plaintiffs Jason Bertino, Esau Galindo and Donald W. Hemans pray that this action be

14   remanded to the Superior Court of the State of California for the County of San Joaquin pursuant to

15   28 U.S.C. § 1447(c).

16   **III.   INTRODUCTION**

17          Plaintiffs respectfully submit this Memorandum in support of their motion for an

18   Order pursuant to 28 U.S.C. § 1447(c) remanding this action to the Superior Court of California,

19   County of San Joaquin.  Plaintiffs' First Amended Complaint (the "Complaint" or "Compl.") provides

20   no ground for federal jurisdiction.  Despite General Motors Corporation's ("GM's") argument to the

21   contrary, the Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections

22   of 28 U.S.C.) (hereinafter "CAFA"), does not apply here because this action commenced before

23   CAFA took effect. The Complaint does not allege a claim on behalf of the named Plaintiffs, or any

24   proposed Class member, that meets the applicable pre-CAFA amount-in-controversy requirement for

25   federal diversity jurisdiction.  The amount in controversy cannot possibly meet the $75,000 per Class

26   member required, and Class members' claims cannot be aggregated under applicable Ninth Circuit

27   law to satisfy the jurisdictional minimum under applicable, pre-CAFA law.  Nor should this Court

28   defer consideration of Plaintiffs' remand motion pending GM's request that this case be transferred to

435060.2                                          - 1 -

1 | an unrelated MDL proceeding.  This action must be expeditiously remanded to state court.

2 | **IV.**     **BACKGROUND**

3 |         Plaintiffs commenced this action on February 17, 2005, alleging California law causes

4 | of action (for violations of the Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq., and the

5 | Consumer Legal Remedies Act, Civil Code §§ 1750, et seq.; fraudulent concealment, unjust

6 | enrichment and breach of warranty) arising from GM's sale of vehicles equipped with inherently

7 | defective intake manifold gaskets.  (Compl. ¶¶ 37-86.)  Plaintiffs allege no claims that arise under or

8 | implicate federal law.  Moreover, the value of each individual Plaintiff's and Class members claim

9 | cannot possibly exceed $75,000 because the value of each of their subject vehicles, as a whole, is

10 | substantially less than $75,000. (See Compl. ¶ 6.)

11 |         GM removed this action on the grounds that diversity jurisdiction exists under CAFA.

12 | In the alternative, GM contends this Court has diversity jurisdiction under 28 U.S.C. § 1332 as it

13 | existed before CAFA became law.  (See Notice of Removal, filed May 5, 2005 [hereinafter

14 | "Removal"] at 4-7, ¶¶ 10-23.)  For the reasons discussed below, CAFA does not apply because this

15 | action commenced prior to its February 18, 2005 enactment.  (Section IV.A., infra.)  Nor can GM

16 | establish any basis for pre-CAFA diversity jurisdiction.  (Section VI.B.1.-4., infra.)  GM's strategic

17 | request that this case be transferred to an unrelated MDL proceeding is also unavailing.

18 | (Section VI.B.5.-6., infra.)  All of GM's arguments to the contrary lack merit, and this action must be

19 | remanded.

20 | **V.**     **LEGAL STANDARD**

21 |         Removal jurisdiction is strictly construed, and any doubt regarding the propriety of

22 | removal must be resolved in favor of remand.  See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S.

23 | 100, 108-09 (1941); Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir. 1979).  The

24 | party attempting to invoke federal jurisdiction has the burden of proving that the Court has subject

25 | matter jurisdiction.  See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936);

26 | Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988) (citing Wilson v. Republic Iron &

27 | Steel Co., 257 U.S. 92, 97 (1921)).  Where, as here, a defendant has not met and cannot meet its

28 | burden, the action must be remanded.

435060.2                - 2 -

1    VI.    <u>ARGUMENT</u>

2         A.    <u>CAFA Does Not Apply, and Provides No Basis for Jurisdiction, Because This</u>
              <u>Action Commenced When It Was Filed On February 17, 2005, Before</u>
3             <u>CAFA's Enactment.</u>

4              On February 18, 2005, CAFA took effect and amended 28 U.S.C. § 1332 to ease the

5    diversity jurisdiction requirements for class actions like this one.[1]  Under the pertinent provisions of

6    CAFA, a federal district court may exercise original jurisdiction over "any civil action in which the

7    matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is

8    a class action in which [] any member of a class or plaintiffs is a citizen of a State different from any

9    defendant. . . ."  § 1332(d)(2).  Critically, however, the plain language of Section 9 of CAFA provides

10   that CAFA applies only to civil actions "*commenced* on or after the date of enactment," *i.e.,* actions

11   commenced on or after February 18, 2005 (emphasis supplied).  Because this action commenced on

12   February 17, 2005, when Plaintiffs filed their complaint in the Superior Court for San Joaquin

13   County, CAFA provides no basis for federal jurisdiction here.

14         1.    <u>GM Wrongly Contends That This Action "Commenced" When</u>
              <u>Service of Process Was Effected.</u>
15

16             GM attempts to buy some time by baldly—and wrongly—contending that this action

     did not "commence" until formal service of process was effected after February 18.  (Removal at ¶
17
     13.)   The Federal Rules of Civil Procedure, federal jurisprudence, and California law all contravene
18
     GM's position, and make clear that a civil action "commences" on the date it is filed.
19
               Federal Rule of Civil Procedure 3 unambiguously states:  "A civil action is
20
     commenced by filing a complaint with the court."  GM's removal petition omits mention that federal
21
     courts have already confirmed that Rule 3 is dispositive of the question of when an action
22
     "commenced" for purposes of applying CAFA's jurisdictional provisions.  In <u>Pritchett v. Office</u>
23
     <u>Depot, Inc.</u>, 404 F.3d 1232, 1235 (2005), the Tenth Circuit Court of Appeals affirmed a district court
24
     _____

25   [1] Subject matter jurisdiction based on diversity of citizenship permits a federal district court to hear
     state causes of action if two basic requirements are fulfilled:  diversity of citizenship as defined by
     statute and the minimum amount in controversy.  <u>See</u> 28 U.S.C. § 1332. CAFA amended section 1332
26   to change the diversity jurisdiction requirements for class action suits.  Under CAFA, a federal district
     court has original jurisdiction over "any civil action in which the matter in controversy exceeds the
27   sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which [] any
     member of a class or plaintiffs is a citizen of a State different from any defendant. . . ."[1] 28 U.S.C.
28    § 1332(d)(2).

     435060.2                                    - 3 -

     NOTICE OF MOTION & MOTION FOR REMAND; MEMORANDUM IN SUPPORT THEREOF

1 order holding that CAFA does not apply to cases filed in state court prior to CAFA's February 18

2 enactment, expressly noting that "a lawsuit is commenced at a discrete moment in time:  the filing of

3 the original complaint in a court of competent jurisdiction."  Although <u>Pritchett</u> recognized that there

4 may be an exception to this general rule where state law provides that service of process commences a

5 suit, <u>id.</u> at 1235, this exception does not apply here because the California Code of Civil Procedure,

6 like the Federal Rules, plainly provides that a civil action is commenced when the complaint is filed.

7 Cal. Code Civ. P. § 350 ( "An action is commenced . . . when the complaint is filed."); <u>compare</u>, <u>e.g.</u>,

8 Conn. Gen. Stat. § 52-45a (2003) (cited in <u>Pritchett</u>, 404 F.3d at 1235.)).

9     **2.    <u>GM Wrongly Contends That "Commenced" Refers To The Date Of Removal.</u>**

10     GM also claims that "commenced" for purposes of CAFA refers to the date of

11 removal, not the date Plaintiffs first filed this case in San Joaquin County.  (Not. of Removal at 4,

12 n.1.)  The Tenth Circuit in <u>Pritchett</u> specifically rejected the defendant's argument that

13 "commencement" refers to the date of removal, and explained why <u>Hunt v. Transport Indem. Ins.</u>

14 <u>Co.</u>, No. 90-00041, 1990 WL 192483, at *2-3 (D. Haw. Jul. 30, 1990) and <u>Lorraine Motors, Inc.</u>

15 <u>v. Aetna Cas. and Sur. Co.</u>, 166 F. Supp. 319, 323 (E.D.N.Y. 1958)[2]—the same authorities upon

16 which GM relies here—do not support the assertion that a case "commences" under CAFA upon

17 removal:

18

19     Although the courts [in <u>Hunt</u> and <u>Lorraine</u>] were interpreting statutory language that is identical to the disputed provision in the

20 instant case, there is a major difference between a statute that defines additional circumstances in which diversity of citizenship exists (such as the Class Action Fairness Act) and a statute that

21 increases the amount-in-controversy requirement.  The latter attempts to restrict federal court jurisdiction, while the former

22 attempts to expand it.  Both <u>Hunt</u> and <u>Lorraine Motors</u> rely heavily

---

23 [2] In <u>Hunt v. Transport Indem. Ins. Co.</u>, No. 90-00041, 1990 WL 192483, at *2-3 (D. Haw. Jul. 30, 1990) (citing <u>Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.</u>, 166 F. Supp. 319, 323 (E.D.N.Y.

24 1958)), and <u>Sayers v. Sears, Roebuck & Co.</u>, 732 F. Supp. 654 (W.D. Va. 1990), legislation increasing the jurisdictional minimum amount-in-controversy requirement under 28 U.S.C section

25 1332 was enacted after those cases were filed in state court, but before they were removed. (<u>Hunt</u>, 1990 WL 192483, at *2; <u>Sayers</u>, 732 F.Supp. at 655.)  Both cases would have met the

26 more modest federal amount-in-controversy requirement in effect on the date they were filed, but neither case could satisfy the requirement in effect as of the time of removal.  (<u>Hunt</u>, 1990 WL

27 192483, at *1-2; <u>Sayers</u>, 732 F.Supp. at 655.)  The district courts ordered both cases remanded, holding that, under the circumstances there presented, the current iteration of section 1332

28 applied.  <u>Hunt</u>, 1990 WL 192483, at *6; <u>Sayers</u>, 732 F.Supp. at 656.

435060.2       - 4 -

NOTICE OF MOTION & MOTION FOR REMAND; MEMORANDUM IN SUPPORT THEREOF

1    upon the principle that removal statutes are to be strictly construed,
      with all doubts resolved against removal.  Thus, in those cases,
2    interpreting the term "commenced" as referring to the filing of the
      removal petition would serve that aim by restricting the number of
3    preexisting state claims that could be removed.  In contrast, such an
      interpretation here would actually permit broader federal court
4    jurisdiction by increasing the number of removable actions.  Given
      this, we remain convinced the term "commenced" in the Act refers
5    to the initial filing, not the removal date.

6   Pritchett, 404 F.3d at 1237-38.  As further noted in Pritchett, any persuasive value of Hunt and

7   Lorraine Motors is further diluted by contemporaneous, contrary authority.  E.g., Kieffer v.

8   Travelers Fire Ins. Co., 167 F. Supp. 398, 402 (D. Md. 1958) (holding that action is

9   "commenced" on initial filing date in state court and declining to impose higher amount-in-

10  controversy requirement enacted after filing and prior to removal); Rhinehart v. Cincinnati, Inc.,

11  716 F. Supp. 7, 8 (E.D. Mich. 1989) (same).

12          **3.      There is No Basis For Original Jurisdiction Over Plaintiff Galindo's
                      Claims And Supplemental Jurisdiction Over The Claims Of Plaintiffs
13                    Hemans and Bertino.**

14          As if conceding that there is no independent basis for federal jurisdiction over the

15  claims of Plaintiffs Hemans and Bertino, GM argues that this Court should exercise jurisdiction over

16  their claims as supplemental under 28 U.S.C. § 1367(a) to the original jurisdiction it contends CAFA

17  confers over Plaintiff Galindo's claims.  (Removal at 7, ¶ 22.)  This argument erroneously presumes

18  that Galindo's claims are subject to CAFA because they were not individually asserted until the First

19  Amended Complaint was filed on March 31, 2005.  GM overlooks that  Plaintiffs Galindo's claims

20  were expressed in the original February 17, 2005 Complaint because Galindo was a member of the

21  proposed Class.  Galindo's representative claims are the same ones the original Complaint already

22  asserted on his behalf.  Thus, Plaintiff Galindo's claims relate back to the filing of the original

23  Complaint on February 17, 2005, and are not subject to CAFA.

24          When a class action complaint is amended to add as a named plaintiff a party who was

25  already a member of the proposed class in the original complaint, the amendment relates back to

26  when the original complaint was filed.  See Guenter v. Lomas & Nettleton Co., 140 Cal. App. 3d 460,

27  476 (1983); Dhuyvetter v. City of Fresno, 110 Cal. App. 3d 659, 665-66 (1980); cf. Immigrant

28  Assistance Project v. Immigration & Naturalization Serv., 306 F.3d 842, 857-58 (9th Cir. 2002)

435060.2                                    - 5 -

1    (holding that amendment relates back when additional plaintiffs and original plaintiffs are "similarly

2    situated"); In re Glacier Bay, 746 F. Supp. 1379, 1391 (D. Alaska 1990) (same).

3              Here, Galindo, who owns a 2001 Chevrolet Malibu, falls squarely within the proposed

4    Class defined in the original Complaint to include:  "All residents of the State of California who

5    purchased or leased, and who continue to own or lease, a new or used General Motors vehicle, model

6    year 1995 to the present, equipped with a 3.1L, 3.4L, 3.8L, 4.3L (V6), 5.0L, 5.7L or 7.4L (V8) engine

7    and an intake manifold gasket."  (Compl. at ¶ 25.)  The individual expression of Galindo's claim in the

8    First Amended Complaint thus relates back to February 17, 2005, and is not subject to CAFA.

9    Because there is no basis for original jurisdiction over any claims in the Complaint, GM's

10   supplemental jurisdiction argument is moot.

11            **B.      GM Cannot Satisfy The Applicable Pre-CAFA Requirements For Federal**
                        **Jurisdiction.**

12

13            Because CAFA does not apply, federal jurisdiction is proper here only if the

      Complaint satisfies the pre-CAFA requirements for diversity jurisdiction. [3]  It does not.

14

                      **1.      GM Must Establish That Every Plaintiff And Class Member Seeks**
                              **Relief In The Amount Of At Least $75,000.**

15

16            On February 17, 2005, when this case commenced, the applicable minimum

17   amount in controversy for diversity jurisdiction was $75,000, exclusive of interest and costs.  The

18   existence or lack of jurisdiction must be determined on the face of the Complaint, see Louisville

19   & N. R. Co. v. Mottley, 211 U.S. 149 (1908), and the amount of damages claimed there controls

20   absent proof of bad faith.  See Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353, n.12 (1961);

21   St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938).  Where a Complaint

22   does not specify a particular amount of damages, the removing defendant must establish by a

23   preponderance of evidence that the amount in controversy requirement is met.  See Gibson v.

24   Chrysler Corp., 261 F.3d 927, 933 (9th Cir. 2001) ("the defendant is to be held to a higher burden

25   than showing a mere possibility that the jurisdictional amount is satisfied."); Sanchez v.

26   Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (citing Gafford v. General Elec.

---

27   [3] GM appears to concur with Plaintiffs that Plaintiffs' claims do not turn on any federal question
     giving rise to jurisdiction under 28 U.S.C. section 1331, as GM did not include federal question
28   jurisdiction as a basis for removal.

NOTICE OF MOTION & MOTION FOR REMAND: MEMORANDUM IN SUPPORT THEREOF

1   Co., 997 F.2d 150, 155-56, n.2 (6th Cir. 1993)).

2           Plaintiffs do not dispute that the parties are of diverse citizenship.  Plaintiffs do not

3   agree, however, that the pre-CAFA amount in controversy requirement is met, and GM has failed in

4   its burden of demonstrating otherwise.  Plaintiffs have disclaimed damages of or greater than $75,000

5   (Compl. at ¶ 6), and the possibility of such damages cannot be discerned on the face of the Complaint.

6                   **2.      The Amount in Controversy Does Not Exceed $75,000.**

7           GM does not dispute the fact that each Plaintiff's and Class member's individual

8   damages cannot possibly approach $75,000.  Instead, GM relies on Plaintiffs' prayers for injunctive

9   relief and attorneys' fees and costs to boost the amount in dispute toward the jurisdictional minimum. [4]

10  GM bases its argument on a fundamentally flawed premise: that aggregation of damages is permitted

11  in determining the federal jurisdictional minimum.  This is contrary to settled Ninth Circuit law.

12                  **3.      Aggregation of Damages and Attorneys' Fees for Purposes of**
                              **Determining the Amount in Controversy Is Not Permitted.**
13

14          Under applicable, pre-CAFA law, Plaintiffs' and Class members' "separate and

15  distinct" claims cannot be aggregated to meet the amount in controversy requirement.  Snyder v.

16  Harris, 394 U.S. 332 (1969).  The Ninth Circuit has followed Snyder in maintaining the general rule

17  that the value of individual class members' claims may not be aggregated in determining the amount

18  in controversy under section 1332.  Snow v. Ford Motor Co., 561 F.2d 787, 790 (9th Cir. 1977).

19  Under Snyder and Snow, GM cannot, as it attempts to do so, calculate the amount in controversy by

20  aggregating the value of the Class members' "separate and distinct" individual claims in this action. [5]

21  [4] Plaintiffs' requests for restitution/disgorgement and punitive damages cannot be aggregated for
    purposes of the amount in controversy requirement, either.  Gibson, 261 F.3d at 944-45 (rejecting
22  argument that disgorgement claim should be aggregated for determining amount in controversy);
    Kanter v. Warner-Lambert Co., 265 F.3d 853 (9th Cir. 2001) (punitive damages may not be
23  aggregated for purposes of the amount in controversy requirement).

    [5] Each Plaintiff owns a single vehicle at issue.  (See Compl. at 3, ¶¶ 13-15.)  The most expensive of
24  these, a Chevrolet Tahoe, has a manufacturer's suggested retail price of $27,150-33,200 when brand
    new.  See http://www.chevrolet.com/trailblazer/7pass/.  The compensation Plaintiffs seek does not
25  exceed their vehicle's purchase price — in fact, it is considerably less.  (Compl. ¶¶ 6, 11.)  No
    Plaintiff's compensatory damages can possibly exceed the purchase price of their vehicle.  Thus, the
26  Plaintiffs' and each Class member's individual damages cannot possibly exceed $75,000, given the
    cost of refund, replacement, and/or the diminished value of their vehicles; the proportionally limited
27  amount of punitive damages allowable under controlling Supreme Court authority; and the relatively
    modest individual value of other compensatory damages incurred and recoverable by the Plaintiffs
28  and each Class member.

NOTICE OF MOTION & MOTION FOR REMAND; MEMORANDUM IN SUPPORT THEREOF

1    Likewise, GM cannot rely on a possible award of attorneys' fees and costs to satisfy

2    the pre-CAFA jurisdictional minimum. The Ninth Circuit has held that attorneys' fees must be

3    divided pro-rata among all members of a plaintiff class for purposes of determining the amount in

4    controversy. See Kanter, 265 F.3d at 858. Gibson also held that "under California law, attorneys'

5    fees are not awarded solely to the named plaintiffs in a class action, and that they therefore cannot be

6    allocated solely to those plaintiffs for purposes of amount in controversy." 261 F.3d at 942.

7    GM's Notice of Removal ignores Kanter and Gibson, and instead relies on an

8    inapposite Fifth Circuit case that stands for the general proposition that attorneys' fees can be factored

9    into the amount in controversy. (See Removal at 7, ¶ 21 (citing Foret v. S. Farm Bureau Life Ins. Co.,

10   918 F.2d 534 (5th Cir. 1991).) GM also cites to In re Abbott Labs., 51 F.3d 524 (5th Cir. 1995),

11   without mentioning that the Ninth Circuit found the result in that case inconsistent with California

12   law. Gibson, 261 F.3d at 942 (distinguishing Louisiana law relied on in Abbott Labs. from Cal. Code

13   Civ. P. § 1021.5; holding attorneys' fees are divided among all class members for purposes of amount

14   in controversy). Finally, GM cites to a Northern District of Florida opinion considering attorney fees

15   in the aggregate that is plainly irreconcilable with the Ninth Circuit's Kanter and Gibson opinions.

16   (Removal at 7, ¶ 21 (citing Howard v. Globe Life Ins. Co., 973 F. Supp. 1412 (N.D. Fla. 1996).)

17   This case involves tens of thousands of Class members. It is beyond peradventure that

18   any Plaintiff's (or Class member's) *pro rata* share of (what is at this point a purely hypothetical)

19   attorneys' fees award will be more than *de minimis*. See e.g., Gibson, 261 F.3d at 941-43. GM

20   cannot meet its burden of showing that any such award will bring Plaintiffs and Class member' claims

21   up to the $75,000 amount in controversy required under pre-CAFA section 1332.

22   **4.    The Potential Cost to GM of Complying with the Injunctive Relief Sought**
     **by Each Plaintiff Is Well Below the Amount in Controversy Minimum.**
23

24   GM mischaracterizes the injunctive relief Plaintiffs seek as a "request that GM pay the

25   costs of setting up a program to inspect and monitor their cars for an exhaustive list of defects . . . ."

26   (Removal, ¶ 20.) GM then attempts to analogize this "request" to one for medical monitoring, and

27   cites a handful of authorities finding that cost of establishing a medical monitoring program satisfies

28

435060.2                                          - 8 -

NOTICE OF MOTION & MOTION FOR REMAND; MEMORANDUM IN SUPPORT THEREOF

1  the amount in controversy requirement, or noting that such court-supervised programs constitute

2  equitable or injunctive relief. (Id.)  To be clear:  nowhere in the operative Complaint do Plaintiffs

3  demand that GM establish a program for the ongoing monitoring of their vehicles, nor do Plaintiffs

4  point an "exhaustive list" of vehicle defects.  Plaintiffs prayer for injunctive relief is simple and

5  specific :  that GM be ordered to pay to repair and/or replace the defective intake manifold gaskets and

6  any additional damage to the Subject Vehicles caused by them.  (Compl. at 16, ¶ 4.)  Plaintiffs do not

7  ask GM to establish any sort of ongoing monitoring program, and GM's attempt to gain a foothold in

8  federal court on the basis of relief Plaintiffs do not seek is unavailing.

9       Regardless of the relief sought, the Ninth Circuit made clear that district courts must

10  not evaluate the value of injunctive relief from the "defendant's perspective," as GM suggests.  Snow,

11  561 F.2d at 789-91; see Kanter, 265 F.3d at 858.  Rather, "the proper focus [] is not influenced by the

12  type of relief requested, but rather continues to depend upon the nature and value of the right

13  asserted."  Kanter, 265 F.3d at 859 (quoting Snow, 561 F.2d at 790-91).  At the root of Snow, as in

14  Kanter, and as here, was a defective product deceptively marketed and sold to thousands of unwitting

15  consumers.  As such, the Ninth's Circuit's reasoning in Snow (i.e., "The right asserted by plaintiffs is

16  the right of individual future consumers to be protected from Ford's allegedly deceptive advertising

17  which is said to injure them in the amount of $11.00 each.") applies with equal force here.  Id.  The

18  cost to GM of any injunctive relief the Court might impose is not a proper measure for meeting the

19  jurisdictional minimum.  The damages that Plaintiffs and Class members individually suffered is well

20  under $75,000.  The Court's inquiry need go no further.

21      **5.    The Law of the Seventh Circuit Is Inapplicable.**

22      GM finally asserts that the law of the Seventh Circuit—which unlike the Ninth allows

23  valuation of the amount in controversy from the defense perspective—applies here.  (Removal at 6, ¶

24  19.)  GM's reasoning is that Seventh Circuit law applies to In re General Motors Corp. Dex-Cool

25  Prods. Liab. Litig., MDL Docket No. 03-1562 (J.P.M.L.) [the "Dex-Cool MDL"] with which GM

26  seeks to have this action coordinated.  Id.  GM is wrong for several reasons.

27      **a.    There Is No Basis For Coordination With The *Dex-Cool* MDL.**

28      GM's presumption that this case will be coordinated in the Dex-Cool MDL is

435060.2    - 9 -

NOTICE OF MOTION & MOTION FOR REMAND; MEMORANDUM IN SUPPORT THEREOF

1   unfounded.  First, there is no federal subject matter jurisdiction over this action.  A case may not be

2   transferred under the multidistrict litigation statute if the prospective transferor court lacks subject

3   matter jurisdiction.  See Glasstech, Inc. v. AB Kyro OY, 769 F.2d 1574, 1576-77 (Fed. Cir. 1985);

4   BancOhio Corp. v. Fox, 516 F.2d 29, 32 (6th Cir. 1975).

5           Second, even if there was no insurmountable jurisdictional hurdle, this action would

6   be inappropriate for the Dex-Cool MDL.  28 U.S.C. section 1407 authorizes MDL transfer and

7   coordination for actions involving "common questions of fact."  See also JPML Rule 1.1 (a "tag-

8   along action" involves "common questions of fact with actions previously transferred under Section

9   1407.")  The Panel's November 14, 2003 Transfer Order in Dex-Cool specifies that the common issue

10  warranting centralization of those cases is whether "the Dex-Cool engine coolant in certain GM

11  vehicles caused significant damage to the vehicles and/or did not perform as warranted."  Plaintiffs

12  here make no claims relating to the performance of Dex-Cool or whether it is defective.  Rather,

13  Plaintiffs' claims in this case arise out of GM's intentional concealment of defective intake manifold

14  gaskets in certain model GM vehicles.  (Compl., ¶¶ 4, 8, 10-12.)  Although the Complaint mentions

15  that when the defective gaskets fail, this causes coolant to leak from the vehicles' cooling systems

16  (Compl., ¶ 5), it is the gaskets, not the coolant—be it Dex-Cool or any other type or brand—are at

17  issue here.  In contrast, the Dex-Cool cases arise out of the alleged defective nature of the coolant

18  itself.  The absence of factual overlap between this case and the Dex-Cool MDL means this case is

19  not a proper "tag-along action" (see JPML Rule No. 1.1), and that is not appropriate for transfer under

20  28 U.S.C. section 1407.  The Judicial Panel on Multidistrict Litigation has not ruled otherwise.

21          **b.      Even if Seventh Circuit Law Applied to This Case, the Amount in
                       Controversy Would Not Be Met.**

22
            GM wrongly contends Seventh Circuit law governs the amount in controversy.

23
    (Removal at 6, ¶ 19.)  Even if the authority cited by GM did apply here, the amount in controversy
24
    would not be met.  Uhl v. Thoroughbred Tech. & Telecomm., 309 F.3d 978 (7th Cir. 2002), cited by
25
    GM, describes how Seventh Circuit courts apply the "either viewpoint" rule to determine the amount
26
    in controversy in class actions.  Uhl does note that "the cost to a defendant of complying with an
27
    injunction sought by the plaintiff may properly be considered in determining the amount in
28

435060.2                                    - 10 -

NOTICE OF MOTION & MOTION FOR REMAND: MEMORANDUM IN SUPPORT THEREOF

1    controversy." Id. at 983.  GM ignores, however, that the opinion goes on to explain:

2        [I]t may be more difficult to make this assessment in the class action context.  We too
         have recognized that there are difficulties in that situation, but we have chosen to
3        resolve them by looking separately at each named plaintiff's claim and the cost to the
         defendant of complying with an injunction directed to that plaintiff.  In our view, that
4        ensures that we are not undermining the nonaggregation rule that still applies to class
         actions where the named plaintiff's claim does not satisfy the jurisdictional amount.
5

6    Id. (citations omitted).[6]  Thus, under Uhl, a court does not look at the total aggregate cost to defendant

7    of complying with the injunctive relief sought by the class but only at the cost to defendant of

8    complying with an injunction directed at "each named plaintiff's claim" individually.  As explained

9    above, the only injunctive relief sought by each named plaintiff is for GM "to pay to repair and/or

10   replace the defective intake manifold gaskets and any additional damage to the Subject Vehicles

11   caused by them. . . ."  (Compl. at 16.)  For each individual plaintiff and Class member, this cost

12   cannot possibly exceed $75,000, and GM has not met its burden of proving otherwise.

13                    **6.      The Court Should Not Wait To Order Remand.**

14                    GM misleadingly invokes the the law of the Seventh Circuit, wrongly presuming that

15   it applies to the removal and remand of this case.  (See Removal at 6, ¶ 19 (citing In re

16   Bridgestone/Firestone, Inc., 129 F. Supp. 2d 1202 (S.D. Ind. 2001); In re Korean Air Lines Disaster,

17   829 F.2d 1171 (D.C. Cir. 1987); In re Ford Motor Co. Bronco II Prods. Liab. Litig., No. MDL-991,

18   1996 WL 257570 (E.D. La. May 16, 1996).)  GM neglects to explain the authorities upon which it

19   relies are all cases where the action was *actually transferred* by the Judicial Panel for Multidistrict

20   Litigation.  See Bridgestone/Firestone, 129 F. Supp. 2d at 1203-04; Korean Air Lines, 829 F.2d at

21   1176; Bronco II, 1996 WL 257570 at *1.  In this case, there has been no transfer; GM merely has

22   filed a Notice of Related Tag-Along Action.

23                    This Court should not await any action (or inaction) on the part of the MDL panel

24   before ordering remand.  The MDL Rules of Procedure expressly provide for this Court to hear

25   and decide pretrial matters regardless of pending requests for MDL transfer under 28 U.S.C. §

26   _____

27   [6] The other authority cited by GM, Gottlieb v. Westin Hotel Co., 990 F.2d 323 (7th Cir. 1993), merely
     denies plaintiff's motion for Rule 11 sanctions, finding it was not frivolous for defendant to argue that
     the "either viewpoint" rule applies to class actions.  Gottlieb contains no substantive holding on the
28   application of the "either viewpoint" rule in class actions, and in any case it is superseded by Uhl.

435060.2                                          - 11 -

1    1407.[7]  In particular, motions to remand for lack of jurisdiction should be resolved expeditiously

2    notwithstanding a pending MDL transfer request.  See e.g., Farkas v. Bridgestone/Firestone, Inc.,

3    113 F.Supp.2d 1107, 1114-15 (W.D. Ky. 2002) (rejecting defendant's request that to retain

4    jurisdiction pending MDL transfer as "counter to the important principle that a court must have

5    the power to decide an issue before passing judgement [sic] on the reasonableness of any

6    particular solution."); Good v. Prudential Ins. Co. of Am., 5 F.Supp.2d 804, 809 (N.D.Cal.1998)

7    (granting stay pending MDL transfer decision only after considering jurisdictional issues in

8    remand motion); Tortola Rest., L.P. v. Kimberly-Clark Corp., 987 F.Supp. 1186, 1188-89

9    (N.D.Cal.1997) (denying stay motion pending MDL transfer request and addressing merits of

10   motion to remand); Kohl v. Am. Home Prods. Corp., 78 F.Supp.2d 885, 888 (W.D.Ark.1999)

11   (staying litigation pending MDL transfer request only after determination that removal was

12   proper and denial of remand was warranted); Aetna U.S. Healthcare, Inc. v. Hoechst

13   Aktiengesellschaft, 54 F.Supp.2d 1042, 1047 (D.Kan.1999) (remand motion raising preliminary

14   jurisdictional issue should be determined before court considers a stay pending MDL transfer).

15                   MDL transfer under section 1407 is not effective unless and until an order of transfer

16   is issued by the Panel *and filed* with the clerk of the transferee court.  See § 1407(c); JPML Rule 1.5.

17   See JPML Rule 1.5; General Elec. Co. v. Byrne, 611 F.2d 670, 673 (7th Cir. 1979) ("The mere

18   pendency of a motion to transfer before the Multidistrict Panel does not affect or suspend the

19   jurisdiction of the transferor court, or limit its ability to act on matters properly before it."); In re Four

20   Seasons Sec. Laws Litig., 362 F. Supp. 574, 575 n.2 (J.P.M.L. 1973) (same).  There is no authority

21   indicating that this Court should apply any law other than that of the Ninth Circuit as long as this

22   Court has jurisdiction over this case.  Any law applicable to the MDL has no effect on this case until

23   such time as a transfer order is filed with the clerk of the transferee court, if ever.

24

25   [7]  MDL Panel Rule 1.5 provides:

26               The pendency of a motion . . . [or] conditional transfer order . . .
             before the Panel concerning transfer . . . of an action pursuant to 28
27           U.S.C. §1407 does not affect or suspend . . . pretrial proceedings in
             the district court in which the action is pending and does not in any
28           way limit the pretrial jurisdiction of that court.

435060.2                                          - 12 -

NOTICE OF MOTION & MOTION FOR REMAND; MEMORANDUM IN SUPPORT THEREOF

1    **VII.    CONCLUSION**

2              Based on the foregoing, Plaintiffs respectfully request that this Court remand this case

3    to the Superior Court of California, County of San Joaquin, where it belongs.

4

5

       Dated: June 6, 2005                              By: __/s/ H. John Gutierrez_____
6                                                              H. John Gutierrez

7

       James Belford Brown (State Bar No. 83355)          Jonathan D. Selbin (State Bar No. 170222)
8      Jennifer A. Scott (State Bar No. 204234)           Lisa J. Leebove (State Bar No. 186705)
       HERUM CRABTREE BROWN,                              H. John Gutierrez (State Bar No. 235406)
9       a California Corporation                          LIEFF, CABRASER, HEIMANN
       2291 West March Lane, Suite B100                    & BERNSTEIN, LLP
10     Stockton, CA  95207                                Embarcadero Center West
       Telephone:  (209) 472-7700                         275 Battery Street, 30th Floor
11     Facsimile:  (209) 472-7986                         San Francisco, CA 94111-3339
                                                          Telephone:  (415) 956-1000
12     John W. Rasmussen                                  Facsimile:  (415) 956-1166
       Dale W. Robinson
13     Jay M. Allen
       JOHNSON, RASMUSSEN, ROBINSON
14      & ALLEN, P.L.C.
       48 North MacDonald Street
15     Mesa, AZ  85201
       Telephone:  (480) 964-1421
16     Facsimile:  (480) 433-7311

17
                 *Attorneys for Plaintiffs Jason Bertino, et al. and the Proposed Class*
18

19

20

21

22

23

24

25

26

27

28

435060.2                                         - 13 -